UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
EUGENE AGBIMSON,

                     Plaintiff,

        -against-

CARLOS HANDY, *et ano.*,

                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

17cv9252

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff Eugene Agbimson brings this defamation action against Defendants Carlos Handy ("Handy") and Mary Jane Hancock ("Hancock," and together, "Defendants"). Agbimson alleges that Defendants libeled him by publishing a letter that he claims accused him of mismanaging trust assets and embezzling funds. Defendants move for summary judgment dismissing this action. For the reasons that follow, Defendants' motion for summary judgment is denied.

BACKGROUND

        The action arises out of internecine squabbling over the Estate of W.C. Handy, a blues musician, composer, and songwriter known as the "Father of the Blues." (Pl.'s 56.1, ECF No. 53, ¶ 7.) The parties' sprawling 200-paragraph Rule 56.1 statement is larded with barbs and accusations concerning the alleged mismanagement of the Handy Estate's assets. It is not "a short and concise statement" of "material facts." (Local Civ. R. 56.1 (emphases added).)

I.     The Parties and Origins of the Dispute

        In 1994, Agbimson began serving as the accountant for the Handy Brothers Music

Company (the "Company"). (Pl.'s 56.1, ¶¶ 7, 8, 11.) His professional engagement expanded to include the W.C. Handy Trust in 2003 (the "Trust," and together with the Company, the "Estate"). (Pl.'s 56.1, ¶¶ 7, 8, 11.) In 2014, Handy began functioning as the sole Trustee and retained Hancock, an attorney, to assist with the Estate's affairs. (Pl.'s 56.1, ¶¶ 15, 41, 42.)

Doal Hanson, another Handy family member, served as the Company's president from 2011 to 2016 and was the custodian of its books and records. (Pl.'s 56.1, ¶¶ 25–27.) During that time, Agbimson expressed concerns that Hanson was withholding the records needed to prepare the Company's tax filings. (See Pl.'s 56.1, ¶¶ 27–35.) In 2014, Handy started to conduct meetings with Trust beneficiaries and retained professionals to organize the Estate's affairs. (See Pl.'s 56.1, ¶¶ 41–71.) Following a March 2015 meeting among Agbimson, Handy, Hanson, and various beneficiaries and family members, Hanson provided Agbimson with sufficient records to complete the Company's 2015 tax filings. (See Pl.'s 56.1, ¶¶ 44–47.)

II.   The May 2016 Meeting and Record Location Efforts

In May 2016, Agbimson, Handy, Hancock, Hanson, and a few beneficiaries held a follow-up meeting at Agbimson's office for the purpose of reviewing the Estate's financials. (Pl.'s 56.1, ¶¶ 52–53, 55.) Despite a request from Handy, Hanson failed to bring the Company's books and records to the meeting and indicated that he was maintaining them in storage units. (See Pl.'s 56.1, ¶¶ 56–61.) When the attendees expressed concerns, Hanson agreed to share the books and records with Agbimson. (See Pl.'s 56.1, ¶¶ 63–71.) Despite that promise, Agbimson contends that he never received any of the records. (Pl.'s 56.1, ¶ 64.)

Apparently, confusion lingered as to the whereabouts of the Company's books and records. (Defs.'s 56.1, ECF No. 39, ¶¶ 74–76.) In June 2016, Defendants asked Agbimson to turn over any Company and Trust records in his possession. (Defs.'s 56.1, ¶ 81.) In August

2016, Agbimson turned over various materials, claiming that they included everything in his possession. (Pl.'s 56.1, ¶ 85.) Defendants assert that Agbimson's production was incomplete. (Defs.'s 56.1, ¶¶ 85–88.)

III. The November 2016 Letter and Aftermath

During a November 2016 visit to Hanson's storage units, Defendants discovered company assets—including royalty statements and memorabilia—in Hanson's own name. (See Defs.'s 56.1, ¶¶ 93–107.) Reacting to that discovery, Handy ousted Hanson as president and assumed that title for himself. (Aff. of Kim Berg in Supp. of Defs.'s Summ. J. Mot., ECF No. 40 ("Berg Aff."), Ex. A ("November 2016 Letter"), at 1.) Acting on Handy's behalf, Hancock then sent the allegedly defamatory letter to Agbimson and Hanson, and copied eight beneficiaries (the "November 2016 Letter"). (Pl.'s 56.1, ¶ 109; November 2016 Letter at 3.) The November 2016 Letter's subject matter was "Handy Brothers Music Co. Inc. requests for return of all assets, contracts, bank accounts, checks, chart of accounts, profit and loss statements, balance sheets, check books, property and monies." (November 2016 Letter at 1.) Agbimson asserts that the November 2016 Letter contained four defamatory statements:

- "After the May 2016 Trust meeting, it was brought to my attention that both of you are holding Handy Brothers Music Co., Inc. property, monies, accounts, checks, charts of accounts, profit and loss statements, balance sheets, check books, and other company documents and items without the knowledge or permission of Dr. Handy, Trustee of WC Handy Estate Trust" (the "First Statement"). (November 2016 Letter at 1.)

- "The abuse of company assets for personal gain must stop immediately" (the "Second Statement"). (November 2016 Letter at 1 (emphasis in original).)

- "I am particularly interested in locating company bank accounts being held in both or either or your names. Both of you must surrender all company accounts immediately" (the "Third Statement"). (November 2016 Letter at 2.)

3

- "[W]e were notified in May in our video-taped Trust meeting that Mr. Agbimson has access to at least one company account for withdrawing funds to pay his invoices" (the "Fourth Statement"). (November 2016 Letter at 2.)

On December 5, 2016, Agbimson responded to the November 2016 Letter, denying its claims and accusing Handy of making unexplained cash withdrawals from Trust accounts. (Decl. of Samuel O. Maduegbuna in Opp. to Defs.'s Mot. for Summ. J., ECF No. 52 ("Maduegbuna Decl."), Ex. 4.) By letter dated December 13, 2016, Hancock fired Agbimson. (Berg Aff., Ex. J.) This defamation lawsuit was filed on November 27, 2017—the last day possible under New York's one-year statute of limitations.

DISCUSSION

I. Legal Standard

Summary judgment is only appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to demonstrate "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). There is no genuine issue for trial where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007) (citation omitted). A court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). After the movant makes its initial showing that there is no triable material issue of fact, the burden shifts to the non-movant to "set out specific facts showing a genuine issue for trial" without relying merely on allegations or denials in the pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).

II.       Elements of a Defamation Claim and Threshold Inquiry

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Biro v. Conde Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (citation and quotation marks omitted). To prove a libel claim, a plaintiff must demonstrate five elements: "(1) a written defamatory statement [of fact] of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." Palin v. The N.Y. Times Co., --- F.3d ----, 2019 WL 3558545, at *2 (2d Cir. Aug. 6, 2019); see also Dillon v. City of N.Y., 704 N.Y.S.2d 1, 38 (N.Y. App. Div. 1999). "[T]he statement must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject." Chau v. Lewis, 771 F.3d 118, 127 (2d Cir. 2014). To that end, "disparaging the integrity and professionalism" of one acting in the scope of their employment may be actionable as defamation. See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, 2016 WL 815205, at *8 (S.D.N.Y. Feb. 29, 2016).

"While it falls to the jury to determine if a plaintiff was actually defamed, a court must decide as a threshold issue if the defamatory statement is <u>reasonably susceptible</u> to the defamatory meaning imputed to it." Van Buskirk v. The N.Y. Times Co., 325 F.3d 87, 90 (2d Cir. 2003) (emphasis added) (citation and quotation marks omitted). "[This] threshold inquiry is guided not only by the meaning of the words as they would be commonly understood, but by the words considered in the context of their publication." Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 2007) (citation omitted). "Challenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing."

5

Celle v. Filipino Reporter Enter., Inc., 209 F.3d 163, 177 (2d Cir. 2000) (citation and quotation marks omitted). A court should not find statements libelous via "a strained or artificial construction." Dillon, 704 N.Y.S.3d at 38. At the same time, courts should not labor "to interpret such writings in their mildest and most inoffensive sense to hold them nonlibelous." Karedes v. Ackerley Grp, Inc., 423 F.3d 107, 114 (2d Cir. 2005) (citation and quotation marks omitted).

This motion implicates the first and fourth elements of a libel inquiry—defamatory statements of fact and falsity. Defendants advance two arguments: (1) that the November 2016 Letter <u>as a whole</u> is a records request and does not constitute a defamatory statement of fact about Agbimson; and (2) that each of the alleged defamatory statements <u>individually</u> either do not concern Agbimson or were substantially true.

III.    <u>Application</u>

   A.  <u>The Entire November 2016 Letter in Context</u>

Defendants first contend that the November 2016 Letter is merely a legal request for records and not susceptible to any defamatory interpretation. This argument misses the point. Agbimson contends not that the November 2016 Letter was defamatory as a whole, but rather that it <u>contained</u> libelous statements. Accordingly, Defendants' myopic focus on the November 2016 Letter's heading, as well as selected excerpts that explicitly request records, is unavailing. By the same token, Defendants' citation to deposition testimony characterizing the November 2016 Letter as a records request is unpersuasive.

Defendants' reliance on Wilson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 490 N.Y.S.2d 553 (N.Y. App. Div. 1985) also misses the mark. In that case, the Appellate Division concluded that an attorney's letter to the plaintiff about an unpaid debt, with no

evidence of diminished reputation or publication to third parties, was a non-actionable "business communication." Wilson, 490 N.Y.S.2d at 554. That case is inapposite because Agbimson has produced evidence both of publication and diminished reputation. (See November 2016 Letter at 3 (demonstrating that letter was sent to beneficiary third parties); Maduegbuna Decl., Ex. 21 ("Agbimson Decl."), ¶¶ 14–15). Nor does Wilson stand for Defendants' broad proposition that the legal tone of the November 2016 Letter necessarily precludes the possibility of defamatory content.

The remainder of Defendants' arguments are more appropriately discussed as they pertain to the individual libelous statements in context.

B. The Individual Statements

Defendants contend that none of the four alleged defamatory statements are actionable. In broad strokes, they dispute either the first prong—defamatory statements of fact concerning Agbimson—or the fourth prong—falsity.

i. The First Statement

"After the May 2016 Trust meeting, it was brought to my attention that both of you are holding Handy Brothers Music Co., Inc. property, monies, accounts, checks, charts of accounts, profit and loss statements, balance sheets, check books, and other company documents and items without the knowledge or permission of Dr. Handy, Trustee of WC Handy Estate Trust." (November 2016 Letter at 1.)

As an initial matter of law, the First Statement is reasonably susceptible to a defamatory interpretation. It enumerates any number of important materials that Agbimson and Hanson are retaining "without [the Estate's] knowledge or permission," followed immediately by the declaration that "Handy Brothers [is] not compliant with state and federal laws while operating under your management and accounting practices." (November 2016 Letter at 1.) These sentences must be read within the context of the entire November 2016 Letter, which lays

bare a litany of financial woes plaguing the Handy Estate, including the discovery of "multiple [financial] discrepancies and irregularities," inability to locate important tax documents, failure to relinquish control over company accounts, and unspecified "abuse of company assets." (See generally November 2016 Letter.) A reasonable reader could draw the obvious causal connection between Agbimson's purported accounting improprieties and the Estate's financial disarray. Accordingly, in context, the First Statement may "tend[] to disparage [Agbimson] in the way of [his] office, profession, or trade," and suggest that he is "unfit to continue [his] calling," which suffices to show a defamatory interpretation. DiFolco v. MSNBC Cable L.L.C., 662 F.3d 104, 114 (2d Cir. 2010) (citation and quotation marks omitted).

Defendants argue that the First Statement cannot give rise to a libel claim because it is opinion, not a statement of fact. "Under New York law, . . . statements that do not purport to convey facts about the plaintiff, but rather express certain kinds of opinions of the speaker, do not constitute defamation." Sleepy's LLC v. Select Comfort Wholesale Corp., 779 F.3d 191, 202 (2d Cir. 2015) (emphases in original). A court must consider:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the . . . surrounding circumstances are such as to signal [to] . . . readers or listeners that what is being read or heard is likely to be opinion, and not fact.

Elias v. Rolling Stone LLC, 872 F.3d 97, 110 (2d Cir. 2017) (citation and quotation marks omitted).

Defendants argue that the First Statement—which proclaims in no uncertain terms that Agbimson is holding company property without permission—is not a statement of fact about Agbimson. Rather, Defendants characterize the First Statement as an opinion because Hancock was repeating what she had heard about the location of Handy Estate property. But this line of

8

reasoning ignores the statement's "straightforward and declaratory" voice. Suarez v. Angelet, 935 N.Y.S.2d 599, 601 (N.Y. App. Div. 2011). Nothing about the First Statement's tone conveys hesitation or uncertainty. To whatever extent the preamble of "it was brought to my attention that" is offered to indicate opinion, "a statement of fact will not be transformed into a statement of opinion solely by use of language expressing . . . qualification." Elias, 872 F.3d at 111. The statement is not freighted with any hyperbolic language suggesting an opinion. Cf. Donofrio-Ferrezza v. Nier, 2005 WL 2312477, at *8 (S.D.N.Y. Sept. 21, 2005) (explaining how defendant's description of work as "impossible" was in context hyperbolic and not a statement of fact).

Moreover, the substance of the statement—that Agbimson was improperly holding company property—can be proven true or false. And even if Hancock were merely asserting an opinion, "[her] statement can still be read as conveying a negative characterization of [Agbimson] without stating sufficient facts to provide the context for that characterization. Under New York law, such a statement is actionable." Friedman v. Bloomberg L.P., 884 F.3d 83, 98 (2d Cir. 2017).

Despite their claim that the First Statement is opinion that cannot be proven true or false, Defendants next aver that the First Statement is not libelous because it is "substantially true." This argument fails in its own right. "[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." Tannerite Sports, LLC v. NBCUniversal News Grp., 864 F.3d 236, 242 (2d Cir. 2017) (citation and quotation marks omitted). In other words, "[w]hen the truth is so near to the facts as published that fine and shaded distinctions must be drawn and

words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." Tannerite Sports, LLC, 864 F.3d at 243 (citation and quotation marks omitted).

To substantiate this defense, Defendants inundate the record with over a thousand pages of tax returns and royalty statements that Agbimson produced in 2018 during discovery in this action. This Court is skeptical that those 2018 document productions retroactively justify the 2016 statements that spawned this lawsuit. In any event, Agbimson claims that he turned over all the documents in his possession in August 2016. (Maduegbuna Decl., Ex. 1 ("Abgimson Dep."), at 157:7–21.) Defendants do not rebut this point with any conclusive evidence. And there is a sizeable gap between the parties' competing versions of events. On the one hand, Agbimson may have refused to turn over company records, accounts, and monies such that "Handy Brothers was not compliant with state and federal laws while operating under [his] management and accounting practices." (November 2016 Letter at 1.) On the other hand, Agbimson may have found additional documents during this litigation, including copies of his own work, that he did not know he had in 2016. That is not some "fine and shaded distinction[]," Chau, 771 F.3d at 130, but rather, a substantial gulf in accuracy.

Accordingly, a question of fact remains as to whether it was substantially true in November 2016 that Agbimson was retaining Handy Company and Trust materials without permission. This issue of fact is a quintessential jury question. See Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

Defendants also point to the undisputed fact that Hanson improperly withheld Company property. But the November 2016 Letter is addressed to both men—in fact, Agbimson is listed first—and draws no distinction between which improprieties are attributable to one or

10

the other.  Defendants cannot tar two people with the same broad brush and then argue that "half true" is tantamount to "substantially true."  See, e.g., Boehner v. Heise, 734 F. Supp. 2d 389, 399 (S.D.N.Y. 2010) (finding an issue of material fact where allegedly defamatory letter contained "elements of truth," but also "inaccurate information," and "thus [could not] be characterized as substantially true").  Thus, this Court denies summary judgment as to the First Statement.

    ii.  The Second Statement

    The defamatory interpretation of the Second Statement—"[t]he abuse of company assets for personal gain must stop immediately"—is self-evident.  Defendants assert that this statement is non-libelous because it is not a factual statement about Agbimson and it is substantially true in context.  Neither of these arguments is convincing.

    First, Defendants aver that because the Second Statement does not explicitly call out Agbimson by name, it is not "about" him.  Rather, Defendants claim that the Second Statement refers to unspecified "private individuals" in the preceding sentence—"[o]ther irregularities exist, such as private individuals who are holding company assets in their personal names and at their residences."  (November 2016 Letter at 1.)  But Defendants' word parsing is inappropriate.  See Celle, 209 F.3d at 178 ("[T]he words [of a defamatory statement] are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood <u>by the public to which they are addressed</u>." (emphasis added)).

    Importantly, "a plaintiff need not be specifically named in a publication to sustain a cause of action," but rather "must sustain the burden of . . . proving that the defamatory statement referred to him . . . ."  Lihong Dong v. Ming Hai, 969 N.Y.S.2d 144, 144 (N.Y. App. Div. 2013).  "[T]he dispositive inquiry is whether a reasonable listener or reader could have concluded that the statements were conveying facts about the plaintiff."  Goldberg v. Levine, 949

N.Y.S.2d 692, 693 (N.Y. App. Div. 2012). To that end, Defendants again ignore the fact that the letter is addressed <u>principally</u> to Agbimson. Consequently, the average reader could perceive any general statements in the letter as referring to him. The Second Statement must also be viewed not only with respect to the preceding sentence, but within the context of the entire paragraph, which references Agbimson's accounting practices. As the Second Statement is italicized at the close of the paragraph, it logically serves as the concluding, catch-all sentiment for the language preceding it. And Defendants' citation to one beneficiary's hearsay testimony that he heard other beneficiaries talking about stolen property does not conclusively refute the November 2016 Letter's express focus on Agbimson and Hanson.

Defendants next renew their argument that the Second Statement is substantially true because of Hanson's behavior. But as discussed above, the letter casts Agbimson and Hanson in the same light. Hanson's undisputed malfeasance, coupled only with inconclusive evidence that Agbimson turned up additional documents during discovery, does not establish that it was "substantially true" that <u>Agbimson</u> was abusing company assets. Moreover, there is no evidence in the record that the trust beneficiaries knew of Hanson's misdeeds, which would have contextualized the November 2016 Letter. <u>See, e.g.</u>, <u>Leidig v. Buzzfeed, Inc.</u>, 371 F. Supp. 3d 134, 143 (S.D.N.Y. 2019) (explaining that a court must analyze the statements as "the intended readership would"). And in making this argument, Defendants effectively concede that the Second Statement could pertain to Agbimson—they contend that the Second Statement relates to Hanson, but it makes no explicit reference to him either. For all of these reasons, this Court denies summary judgment on the Second Statement.

### iii. The Third and Fourth Statements

"I am particularly interested in locating company bank accounts being held in both or either or your names. Both of you must surrender all company accounts immediately." (November 2016 Letter at 2.)

"[W]e were notified in May in our video-taped Trust meeting that Mr. Agbimson has access to at least one company account for withdrawing funds to pay his invoices." (November 2016 Letter at 2.)

As recognized in the parties' briefs, the Third and Fourth Statements are best analyzed together. Defendants argue that the Third Statement is substantially true, and that the Fourth Statement is not a statement of fact, and in any event, is substantially true. To that end, the parties spend considerable time debating the contours of how Agbimson could request payments from an Automated Clearing House account for his invoices. This dispute is precisely the kind of immaterial quibble negated by the "substantial truth" defense. And ultimately, the parties' concern with substantial truth is irrelevant—by their express wording, these two statements do not expose Agbimson to the "public contempt, ridicule, aversion or disgrace" necessary to undergird a defamation claim. Elias, 872 F.3d at 104.

Nevertheless, Agbimson's claim relating to the Third and Fourth Statements also sounds in the narrower doctrine of "defamation by implication." Defamation by implication is "premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." Armstrong v. Simon & Schuster, 85 N.Y.2d 373, 381 (N.Y. 1995). Under this doctrine, libel may occur "where a combination of individual statements which in themselves may not be defamatory might lead the reader to draw an inference that is damaging to the plaintiff." Herbert v. Lando, 781 F.2d 298, 307 (2d Cir. 1986). "The alleged innuendo may not enlarge upon the meaning of words so as to convey a meaning that is not expressed." Biro, 883 F. Supp. 2d at 466. Thus, to advance a claim for defamation by

implication, "the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." Stepanov v. Dow Jones & Co., 987 N.Y.S.2d 37, 37–38 (N.Y. App. Div. 2014). In other words, "if the communication, by [its] particular manner or language . . . supplies additional, affirmative evidence suggesting that the defendant <u>intends</u> or <u>endorses</u> the defamatory inference, the communication will be deemed capable of bearing that meaning[.]" Stepanov, 987 N.Y.S.2d at 36 (emphases in original).

Defendants ignore the defamation-by-implication inquiry altogether in their motion papers. But this Court is satisfied on this summary judgment record that there are questions of fact more appropriate for resolution at trial. The November 2016 Letter contains no <u>explicit</u> accusations of embezzlement or fraud, but a fair reading demonstrates an unmistakable indictment of Agbimson's professionalism and rectitude as an accountant.

In Agbimson's view, the Third and Fourth Statements imply that he stole money from company accounts, and the implications are straightforward. The November 2016 Letter outlines numerous problems stemming from Agbimson's accounting practices, including failure to file tax documents, financial "irregularities," and "abuse of company assets for personal gain." With that context, the claim that Agbimson repeatedly declined to turn over control of an account that he used to pay his invoices strongly suggests that scrutiny of his activities would reveal wrongdoing—namely, theft. Cf. Wilson v. New York, 2018 WL 1466770, at *5 (E.D.N.Y. Mar. 26, 2018) (finding there was no "rigorous showing" for defamation by implication where alleged statement was "equally suggestive" of both positive and negative inferences); Kshetrapal v. Dish Network, 90 F. Supp. 3d 108, 117 (S.D.N.Y. 2015) (dismissing defamation-by-implication case where there were no other contextual statements indicating an intended defamatory inference).

The implication is reinforced by Defendants' demand that Agbimson "surrender" any funds "immediately." This interpretation is further bolstered by deposition testimony that a beneficiary perceived the letter to be "accusatory." (Maduegbuna Decl., Ex. 20, at 142:4–143:3.) Agbimson also received calls from non-beneficiaries asking him whether he was stealing money from the Handy Estate. (Agbimson Dep., at 136:8–137:3; Agbimson Decl., ¶¶ 14–15.)

By its plain language, the November 2016 Letter also indicates that Defendants may have intended or endorsed the defamatory inference. Specifically, Defendants accused both men of wrongdoing, even though only Hanson's improprieties had been confirmed. See Partridge v. State, 100 N.Y.S.3d 730, 737 (N.Y. App. Div. 2019) (explaining how placing the plaintiff in the same company as other criminals, without properly distinguishing between them, indicated intent or endorsement). The reference to "particular[]" interest in locating the bank accounts, as well as the frequent use of italics in the surrounding paragraph, draws the reader to the issue of company accounts. By copying beneficiaries on a letter addressed nominally to Agbimson and Hanson, Defendants sought to make the beneficiaries spectators to this dressing-down without contextualizing the previous days' events.

After weighing all of these considerations, this Court finds that there are material issues of fact that preclude summary judgment on the Third and Fourth Statements.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 38.

Dated: August 14, 2019
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

15